UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ACE AMERICAN INSURANCE COMPANY,**

  *Plaintiff/Counter-Defendant*,

v.

**MARIBEL LERMA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MARISELA CADENA, ANTONIO LERMA JR., MARICELA LERMA, MARISSA LERMA, RIVER SUB, LLC,**

  *Defendants/Counter-Plaintiff*.

Case No. SA-23-CV-00539-JKP

## MEMORANDUM OPINION AND ORDER

Before the Court are four motions. Plaintiff/Counter-Defendant ACE American Insurance Company (hereinafter "ACE") and Defendants Maribel Lerma, Individually and as a Representative of the Estate of Marisela Cadena, Antonio Lerma, Jr., Maricela Lerma, and Marissa Lerma (hereinafter "the Lermas") bring a motion to dismiss the Lermas, pursuant to the parties' stipulation, which the Court **GRANTS** as unopposed. *See* ECF No. 6. Defendant/Counter-Plaintiff River Sub, LLC, (hereinafter "River Sub") brings a motion to dismiss the complaint for failure to state a claim and want of jurisdiction, which the Court **DENIES WITHOUT PREJUDICE** to refiling as a motion for summary judgment. *See* ECF No. 10. ACE brings a motion for judgment on the pleadings, which the Court **DENIES WITHOUT PREJUDICE** to refiling as a motion for summary judgment. *See* ECF No. 13. Finally, ACE brings a motion to dismiss River Sub's counterclaim for failure to state a claim, which the Court **GRANTS IN PART** and **DENIES IN PART**. *See* ECF No. 23. The Court

heard argument on the parties' motions in an October 23, 2023 hearing. After due consideration of the parties' briefings, arguments, and the applicable law, the Court issues its rulings consistent with this Memorandum Opinion and Order.

## BACKGROUND

This action arises out of a present controversy between ACE American Insurance Company and its insured, River Sub, LLC, d/b/a Subway, regarding whether ACE has a duty to indemnify River Sub for the judgment award in the underlying state court action styled *Maribel Lerma, et al. vs. River Sub, Ltd. d/b/a Subway* under case number 2021CI15278 in the 131st Judicial District Court of Bexar County, Texas. In the underlying action, the Lermas sued River Sub because their family member, Marisela Cadena, was murdered by an ex-boyfriend, Andrew Munoz, at the Subway restaurant where she worked. The parties proceeded to arbitration and the arbitration award and judgment were entered on April 3, 2023 in the amount of $2,970,000, finding River Sub responsible in part for Cadena's death by breaching non-delegable duties, including the duty to provide a safe place to work and failing to take certain safety measures despite knowledge of a substantial risk of workplace violence against Cadena.

River Sub requests the Court take judicial notice of the adjudicated facts in the state court's Amended Final Judgment and Award of Arbitrator. *See* ECF No. 10-2. ACE agrees the award and final judgment are central to the claims and should be considered by the Court in connection with the parties' motions. *See* ECF No. 13 at 8. The adjudicated facts are, therefore, deemed admitted, and form the basis of the Court's summary of the background facts in this case.

Cadena was employed by River Sub as a store manager at a Subway restaurant in San Antonio, Texas. *See* ECF No. 10-2 at 3. On February 16, 2020, Cadena's ex-boyfriend, Munoz,

kidnapped Cadena at gunpoint and took her to a field for several hours before releasing her. *Id*. Cadena reported Munoz to the police and took steps to hide from Munoz in her personal life. *Id*. at 4. Specifically, Cadena sought protection from the authorities via a restraining/protective order, moved in with her daughter, switched cars with her daughter, and had someone else feed her pets so she could avoid her apartment. *Id*. On February 25, 2020, Cadena told River Sub's District Manager and Cadena's direct supervisor, Sergio Martinez, about the kidnapping. *Id*. at 3. Arbitrator Hon. Carlos R. Cortez found Cadena requested a transfer from Martinez. *Id*. at 4. Martinez did not transfer Cadena and Arbitrator Cortez determined there was evidence Martinez may have demanded an inappropriate *quid pro quo* before he would agree to transfer Cadena. *Id*. On the morning of February 28, 2020, Munoz entered the restaurant and shot Cadena multiple times, resulting in her death. *Id*. at 5.

    The Lermas asserted premise liability, negligent activity, and gross negligence causes of action against River Sub, contending River Sub was responsible for Cadena's death. Arbitrator Cortez determined Munoz bore the overwhelming percentage of responsibility for the murder. *Id*. at 6. However, he also determined River Sub shares at least 1% responsibility for Cadena's death. *Id*. Arbitrator Cortez awarded Maribel Lerma, Antonio Lerma, and Maricela Lerma $500,000 each for past and future loss of companionship and past and future mental anguish. *Id*. at 9–10. He awarded Marissa Lerma $1,000,000 for past and future loss of companionship and past and future mental anguish. *Id*. Additionally, he awarded Cadena's estate $470,000 for conscious pain and suffering and mental anguish. *Id*. at 9. The trial court later affirmed the award in a final judgment. *See* ECF No. 10-3.

The parties agree to the Court's admission of the insurance policy ACE issued River Sub, which is therefore deemed admitted. *See* ECF Nos. 10-4, 13-3.[1] Specifically, ACE issued Occupational Accident Insurance to River Sub under Policy Number OCA N04190944001, with an original effective date of February 19, 2007, which provides liability coverage for certain injuries to River Sub's employees. *See* ECF No. 13-3. The policy is sold as an alternative to the typical Texas workers' compensation policy which is governed by statute, Tex. Lab. Code, Title A, Ch. 406. The policy was renewed by amendment on an annual basis. On February 19, 2020, Amendment 23 to the policy was added renewing the policy until February 19, 2021. Specific policy provisions relevant to this lawsuit are quoted and discussed below. ACE contends it has no duty to indemnify River Sub for the final judgment award under the terms of the policy agreement. River Sub disagrees and, in the alternative, argues ACE misled it about what the policy covers.

**LEGAL STANDARD**

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present

---

[1] The copy of the insurance policy attached to River Sub's motion is incomplete. The Court, therefore, relies on the complete copy attached to ACE's motion. *See* ECF No. 13 at 8 n.1; 13-3.

evidence to support adequately asserted claims. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

Courts use the same standard under Rule 12(c) as Rule 12(b)(6). *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Id*.

## ANALYSIS

Four motions are currently before the Court: (1) ACE and the Lermas' motion to dismiss the Lermas (ECF No. 6); (2) River Sub's motion to dismiss the complaint (ECF No. 10); (3) ACE's motion for judgment on the pleadings (ECF No. 13); and (4) ACE's motion to dismiss River Sub's counterclaim (ECF No. 23). The Court considers each of these motions, in turn, below.

I. **ACE and the Lermas' Motion to Dismiss the Lermas**

Based on its understanding that judgment creditors are necessary and proper parties under the Federal Declaratory Judgment Act, ACE included the Lermas as parties to this civil action. The Lermas stipulate and agree to be bound by the Court's final judgment in this action. In exchange for the Lermas' agreement to be bound, ACE seeks dismissal of the Lermas from this action. Pursuant to Rule 41(a)(2), the parties request the Court's entry of an order dismissing the Lermas from the case. With this Memorandum Opinion and Order, the Court grants the parties' request and dismisses the Lermas from the case. This order shall have no impact on the ongoing coverage dispute between ACE and River Sub, which shall remain pending in this civil action.

II. **River Sub's Motion to Dismiss the Complaint**

In its complaint, ACE contends three exclusions to the policy preclude any duty to indemnify River Sub from a portion of its liability. Specifically, ACE cites the following language:

**EXCLUSIONS**

No reimbursement will be made for, any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following:

\*   \*   \*

5. An act of a third person intended to injure the Covered Person because of personal reasons and not directed at the Covered Person as an Employee or because of his or her employment with the Policyholder;

\*   \*   \*

10. Claims arising from work place negligence or employment relationships including without limitation, claims for any type of employment discrimination, wrongful discharge, retaliatory discharge, coercion, sexual harassment, American with Disabilities Act claims, and claims arising

> from under the Labor Code of any state, and all other claims affecting or arising from the employment relationship whether arising under state or federal statutes or regulations of the common law;
>
> \* \* \*
>
> 30. Mental trauma and mental, nervous, emotional or psychological conditions or disorders.

The parties agree the crux of ACE's argument is based on Exclusion No. 5, so the Court focuses its analysis there. Exclusion No. 5 is based on the typical "personal animosity exception" found in workers' compensation policies, as prescribed by the Texas Workers' Compensation Act, § 406.032. The policy in this case was offered to River Sub as a substitute to the typical workers' compensation policy. The parties, therefore, urge the Court to apply Texas caselaw interpreting the workers' compensation personal animosity exception to Exclusion No. 5 in this case. The Court, however, is not convinced that authority is controlling. Exclusion No. 5 largely tracks the language of the personal animosity exception but differs in material ways. The Court provides a side-by-side comparison of the two below.

| Section 406.032 of the Texas Workers' Compensation Act (the "Personal Animosity Exception") | Exclusion No. 5 of the Occupational Accident Insurance Policy |
|---|---|
| "An insurance carrier is not liable for compensation if (1) the injury (c) arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment." | "No reimbursement will be made for, any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following: …<br><br>"5. An act of a third person intended to injure the Covered Person because of personal reasons and not directed at the Covered Person as an Employee or because of his or her employment with the Policyholder; …" |

ACE notes, and the Court agrees, the precatory language in Exclusion No. 5 differs materially from the personal animosity exception. Specifically, Exclusion No. 5 has anti-concurrent causation language leading into the exclusion. Whereas the personal animosity exception bars liability for compensation for an injury if it "arose out of" the acts of a third party for personal reasons, Exclusion No. 5 bars reimbursement for "any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of" the acts of a third party for personal reasons. In this way, the language of Exclusion No. 5 is broader than the typical personal animosity exception. That being said, the Court agrees the actual language of Exclusion No. 5 is materially the same as the language of the workers' compensation personal animosity exception. Therefore, caselaw interpreting the personal animosity exception has some bearing on the Court's analysis in this case.

The parties offer different interpretations of what the caselaw says. According to ACE, the caselaw provides that the personal animosity exception applies to those injuries resulting from a dispute which has been transported into the place of employment from the injured employee's private or domestic life. ACE further contends that in this case, Cadena, as a victim of domestic abuse, was killed as a result of a pattern of threats and violence perpetuated by her ex-boyfriend for personal reasons, and not as an employee or because of her employment. As a result, ACE concludes Exclusion No. 5 applies and any judgment against River Sub entered in the underlying proceeding is not covered under the policy.

River Sub offers a more nuanced view of the caselaw. River Sub cites the Texas Supreme Court opinion in *Nasser v. Security Ins. Co.* for the premise that the operative question in determining whether the personal animosity exception applies is whether the plaintiff's injury was sustained "in the course of" their employment. 724 S.W.2d 17 (Tex. 1987). In the *Nasser*

8

case, a restaurant manager was stabbed by the jealous ex-boyfriend of a customer he frequently served. *Id*. at 18. The *Nasser* court found the "personal animosity exception" did not apply because the perpetrator's animosity was "exacerbated" by the employee's job, serving customers. *Id*. at 19. "Whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment." *Id*. Here, River Sub argues the conditions of Cadena's employment were factors in her injury—namely, Martinez's refusal to transfer Cadena to a different Subway restaurant gave Munoz an opportunity to find and kill Cadena at the location where Munoz knew Cadena worked. River Sub further analogizes to *Commercial Std. Ins. Co. v. Marin*, in which the employee was raped and murdered in the early morning hours as she was opening her employer's service station for business. 488 S.W.2d 861, 868–870 (Tex. Civ. App.—San Antonio 1972 writ ref'd n.r.e.). The *Marin* court found the employer requiring the employee work "during the hours of darkness" imposed "occupational hazards not shared by others." *Id*. at 869–70. Here again, River Sub argues Martinez requiring Cadena to work at the Subway restaurant where Munoz could find her created a danger arising out of the conditions of her employment.

ACE distinguishes *Nasser* and *Marin* from the case at bar. ACE notes the *Nasser* employee had no personal dispute that was transported into his place of employment from his private or domestic life. *Nasser*, 724 S.W.2d at 19. To the contrary, the *Nasser* employee was fulfilling a requirement of his employment, being nice to customers, which caused his customer's ex-boyfriend to become jealous and attack him. *Id*. In contrast, Munoz attacked Cadena for solely personal reasons. In *Marin*, the perpetrator offered inconsistent accounts of whether he had a prior relationship with the victim; however, the *Marin* court found the jury did

not believe they had a prior relationship. *Marin*, 488 S.W.2d at 863. This led the *Marin* court to conclude the *Marin* employee, unlike Cadena, was not attacked for personal reasons. ACE further cites *Liberty Mut. Ins. Co. v. Upton* for the premise that employees injured by their current or former romantic partners fit squarely within the personal animosity exception. 492 S.W.2d 623, 625–26 (Tex. App.—Fort Worth 1973, no pet.). The *Upton* employee was at work, talking on the telephone regarding company business, when her ex-husband walked up and shot her four times, killing her. *Id*. at 624. The *Upton* court found the exception applied because "[t]he undisputed evidence showed that the shooting was directed against her because of reasons that were personal to her and [the perpetrator]." *Id*. at 626.

To summarize the difference between the parties' interpretation of the caselaw, ACE contends any personal dispute transported into the place of employment is subject to the personal animosity exception, whereas River Sub suggests even personal disputes may fall outside the exception if the conditions of employment are a contributing factor to the injury. On this point, differences between the language of the personal animosity exception interpreted by the caselaw and the language of Exclusion No. 5 in this case are relevant. If, as ACE suggests, the precatory language to Exclusion No. 5 is broader than the personal animosity exception, the caselaw on this question is not dispositive. Though ACE raised this argument in its written briefing and oral argument, neither party thoroughly briefed it. The Court, therefore, denies without prejudice River Sub's motion to dismiss subject to refiling as a motion for summary judgment. The parties may re-urge arguments made at this stage of the litigation in their future filings; however, the parties are on notice that the Court will apply principles of Texas contract law interpreting insurance contracts in rendering its final decision.

The Court similarly reserves ruling on the applicability of Exclusion No. 10 and Exclusion No. 30. ACE informed the Court those exclusions are raised as arguments made in the alternative and, therefore, did not thoroughly brief them.

### III. ACE's Motion for Judgment on the Pleadings

ACE combines its response to River Sub's motion to dismiss with its own Rule 12(c) motion for judgment on the pleadings, arguing that, as a matter of law, there is no coverage under the policy ACE issued to River Sub. *See* ECF No. 13. ACE relies on the same arguments for its response and its motion. For the same reasons the Court gave for denying River Sub's motion to dismiss, the Court denies without prejudice ACE's motion for judgment on the pleadings, subject to refiling as a motion for summary judgment.

### IV. ACE's Motion to Dismiss River Sub's Counterclaim

River Sub brings a counterclaim against ACE for declaratory judgment and breach of contract, arguing the policy exclusions cited by ACE do not apply in this case and ACE breached its contract to insure River Sub by refusing to indemnify River Sub following entry of judgment in the underlying state court action. ACE relies on arguments made in its earlier filings as to these causes of action because they turn on the same question before the Court in ACE's complaint—that is, whether ACE has a duty to indemnify River Sub. The Court denies without prejudice ACE's motion as to these causes of action for the reasons discussed above.

River Sub argues in the alternative that, if the Court finds ACE has no duty to indemnify River Sub under the policy, ACE should be liable based on an alleged misrepresentation regarding coverage made in February 2008. *See* ECF No. 17. Specifically, River Sub contends Brett Morgan with SWBC Insurance Services, Inc., in promoting the policy, indicated the policy would cover liability for criminal acts resulting in injuries to and claims by River Sub's

11

employees. In its motion to dismiss, ACE argues, as an initial matter, the statute of limitations on River Sub's counterclaim has expired. ACE further argues, to the extent the statement was ever made, it was not a misrepresentation because the policy does cover liability for criminal acts—just not acts of a third person intended to injure the employee because of personal reasons. The Court need not reach ACE's main arguments; however, because River Sub, as the insured, has a duty to read the policy and is charged with knowledge of the policy terms and conditions under Texas law. *See Glenn v. L. Ray Calhoun & Co.*, 83 F.Supp.3d 733, 747 (W.D. Tex. 2015).

River Sub attached to its counterclaim a copy of the policy that was issued to River Sub on March 13, 2007, which includes the personal animosity exclusion at issue in this case. *See* ECF No. 17-1 at 12 ¶ 7. Courts may consider documents that are attached to a motion that are referred to in the plaintiff's complaint and central to the plaintiff's claims. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Because the 2007 policy was attached to the motion and the counterclaim, referred to in the counterclaim, and central to the counterclaim, the Court will consider the 2007 policy in connection with ACE's motion to dismiss. The 2007 policy was issued before Morgan allegedly made misrepresentations about the policy on either February 7, 2008 or February 17, 2008. Because River Sub is deemed to have knowledge of the policy terms and conditions as a matter of law, and the policy included the personal animosity exclusion at the time the alleged misrepresentations were made, the Court finds River Sub had knowledge of the personal animosity exclusion at the time the alleged misrepresentations were made. River Sub's counterclaim based on Morgan's alleged misrepresentation therefore fails as a matter of law and ACE's motion to dismiss the counterclaim on those grounds is granted.

ACE further notes River Sub, in its amended counterclaim, removed all factual allegations regarding ACE's alleged unreasonable failure to settle claim; however, conclusory

allegations regarding violations of the Texas Insurance Code and Deceptive Trade Practices Act remain. The Court agrees the allegations in question are conclusory and offered without factual or legal support. Those claims are, therefore, dismissed pursuant to Rule 12(b)(6).

River Sub was given the opportunity to amend its counterclaim, pursuant to the Court's standing order, and did amend its counterclaim. *See* ECF Nos. 11, 14, 17. The Court, therefore, finds River Sub has pled its best case and dismissal of the dismissed causes with prejudice is appropriate. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968). Only River Sub's causes of action for declaratory judgment, breach of contract, and attorneys' fees shall be allowed to proceed.

## CONCLUSION

For the reasons discussed, the Court grants ACE and the Lermas' motion to dismiss the Lermas, denies without prejudice River Sub's motion to dismiss the complaint, denies without prejudice ACE's motion for judgment on the pleadings, and grants in part and denies in part ACE's motion to dismiss River Sub's counterclaim.

**IT IS THEREFORE ORDERED** that, pursuant to the parties' stipulation, the Court **GRANTS** ACE and the Lermas' Motion to Dismiss the Lermas and **DISMISSES** the Lermas from this case. *See* ECF No. 6. The Clerk of Court is **INSTRUCTED** to dismiss Maribel Lerma, Individually and as a Representative of the Estate of Marisela Cadena, Antonio Lerma, Jr., Maricela Lerma, and Marissa Lerma. This order shall have no impact on the ongoing coverage dispute between ACE and River Sub, which shall remain pending in this civil action.

**IT IS FURTHER ORDERED** that the Court **DENIES WITHOUT PREJUDICE** River Sub's Motion to Dismiss the Complaint, subject to refiling as a Motion for Summary Judgment. *See* ECF No. 10.

**IT IS FURTHER ORDERED** that the Court **DENIES WITHOUT PREJUDICE** ACE's Motion for Judgment on the Pleadings, subject to refiling as a Motion for Summary Judgment. *See* ECF No. 13.

**IT IS FINALLY ORDERED** that the Court **GRANTS IN PART** and **DENIES IN PART** ACE's Motion to Dismiss River Sub's First Amended Counterclaim. *See* ECF No. 23. River Sub's causes of action for declaratory judgment, breach of contract, and attorneys' fees shall be allowed to proceed. *See* ECF No. 17 at 20, 24 ¶¶ 50, 51, 52, 53, 61. All other causes of action in River Sub's counterclaim are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

It is so ORDERED.
SIGNED this 13th day of November, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE